**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JAMES BROWN HENDERSON,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 03-CV-0459-CVE-PJC |
| | ) |
| **RON WARD, Director Oklahoma** | ) |
| **Department of Corrections,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

Before the Court for consideration is Petitioner's 28 U.S.C. § 2254 petition for a writ of habeas corpus (Dkt. # 1-2). Respondent filed a response (Dkt. # 4) and provided the state court records (Dkt. ## 5, 6, and 7) necessary for adjudication of Petitioner's claims. Petitioner did not file a reply to Respondent's response. For the reasons discussed below, the Court finds the petition shall be denied.

### *BACKGROUND*

During the evening hours of January 18, 2000, two gunmen on foot approached and attacked the occupants of a car driven by Jason Bell. The gunman on the passenger side of Bell's car held a gun to the passenger and told her not to move or he would shoot her. The gunman on the driver's side fired shots striking Bell who later died of gunshot wounds. The attack occurred in Bell's driveway located in Tulsa, Oklahoma.

As a result of those events, Petitioner James Brown Henderson was initially charged, along with two (2) co-defendants Demario Grayson and Ronald D. Kaufman, with First Degree Murder in Tulsa County District Court, Case No. CF-2000-549. On March 17, 2000, the State dismissed the case. The State then re-filed the Information in Tulsa County District Court, Case No. CF-2000-

1483, charging Petitioner and both co-defendants with First Degree Murder. However, on April 7, 2000, before the preliminary hearing, the trial court announced that the charge against Demario Grayson had been dismissed. At the conclusion of the preliminary hearing, the trial court sustained the defendants' demurrer based on insufficient evidence to find probable cause. On April 28, 2000, the case was dismissed and the defendants were released from custody. On May 5, 2000, the State again re-filed the Information in Tulsa County District Court, Case No. CF-2000-2372, charging Petitioner with acting in concert with Ronald Kaufman to commit First Degree Murder. After the magistrate judge determined that the State had in fact discovered new evidence, the case proceeded to preliminary hearing. Petitioner and his co-defendant were bound over for trial. On June 2, 2000, an amended information was filed, charging Petitioner with acting in concert with Ronald Kaufman to commit Count I, First Degree Murder and/or in the alternative First Degree Murder in the Commission of a Felony. On January 16-18, 2001, Petitioner and his co-defendant were tried jointly by a jury. Petitioner was found guilty of Murder in the First Degree - Malice Aforethought and/or in the alternative of Murder in the First Degree in the Commission of a Felony.[1] On March 23, 2001, the trial court sentenced Petitioner, in accordance with the jury's recommendation, to life with the possibility of parole. Petitioner was represented at trial by attorney Everett Bennett.

Petitioner appealed his conviction and sentence to the Oklahoma Court of Criminal Appeals ("OCCA"). On appeal, Petitioner was represented by attorney Gail L. Wettstein. He raised three (3) propositions of error as follows:

---

[1] Petitioner's co-defendant, Ronald D. Kaufman, was found not guilty of Murder in the First Degree -- Malice Aforethought, but guilty of the alternative charge of Murder in the First Degree in the Commission of a Felony and sentenced to life with the possibility of parole.

> Proposition 1: After correctly dismissing the charges against the defendant at preliminary for insufficient evidence of probable cause, the magistrate committed reversible error by finding Dyra Malone to be a newly discovered witness.
>
> Proposition 2: The jury was tainted by examining fiber evidence which had not been introduced into evidence at trial; the trial court committed reversible error by overruling the defendant's motion for mistrial.
>
> Proposition 3: The trial court erred by coercing the deadlocked jury into reaching a verdict.

(Dkt. # 4, Ex. A). In an unpublished summary opinion, filed May 10, 2002, in Case No. F-2001-374, the OCCA determined that none of Petitioner's claims was meritorious and affirmed the Judgment and Sentence of the trial court. (Dkt. # 4, Ex. C). Petitioner did not file a petition for writ of *certiorari* in the United States Supreme Court and did not seek post-conviction relief in the state courts prior to filing his original habeas corpus petition.

On May 14, 2003, Petitioner filed his federal habeas corpus petition in the United States District Court for the Western District of Oklahoma (Dkt. # 1-2). By Order filed June 27, 2003, the case was transferred to this District Court. In his habeas petition, Petitioner identifies his claims as follows:

> Ground 1: Petitioner was deprived of due process and equal protection when the trial court abused its discretion by "finding" that the State had satisfied its burden by presenting Dyra Malone as a "newly discovered" witness when that witness was known to the State's "investigation team" three or four days prior to preliminary hearing date but made no effort to find Dyra Malone or secure her testimony for preliminary hearing.
>
> Ground 2: Petitioner was deprived of his right to confrontation with regard to forensic evidence, "grass, hair and red fiber," which was not introduced into evidence and which tainted the jury by its exposure.
>
> Ground 3: Trial court invaded the province of the jury by giving the "Allen" instruction over defense counsel's objection and coerced the deadlocked jury into reaching a verdict that otherwise, they may not have reached.

(Dkt. # 1-2). In response to the petition, Respondent contends Petitioner is not entitled to habeas corpus relief and that the petition should be denied.

*ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). Rose v. Lundy, 455 U.S. 509, 510 (1982). Respondent concedes and the Court agrees that the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied for the claims raised in the petition filed in this case. In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing. See Michael Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). In this case, the OCCA adjudicated each of Petitioner's claims on direct appeal. Therefore, his claims shall be reviewed pursuant to § 2254(d).

*1. Erroneous finding of "new evidence" to support refiling of charge (claim 1)*

As his first proposition of error, Petitioner contends that the State failed to present "new evidence" sufficient to justify the re-filing of the Information after the prior Information had been

4

dismissed for lack of sufficient evidence to support a finding of probable cause. Petitioner presented this claim on direct appeal where it was rejected by the OCCA, as follows: "we find the testimony of Dyra Malone constituted additional or newly discovered evidence under the standards set forth in *Chase v. State*, 517 P.2d 1142 (Okl.Cr.1973), *Nicodemus v. District Court of Oklahoma County*, 473 P.2d 312 (Okl.Cr.1970), and *Jones v. State*, 481 P.2d 169 (Okl.Cr.1971) to support the refiling of the criminal charges against Appellant." (Dkt. # 4, Ex. C at 2).

In response to the petition, Respondent argues, *inter alia*, that this claim concerns issues of state law and is not cognizable on habeas corpus review. As urged by Respondent, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bowser v. Boggs, 20 F.3d 1060, 1065 (10th Cir. 1994) ("We will not second guess a state court's application or interpretation of state law on a petition for habeas unless such application or interpretation violates federal law.").

Under Oklahoma law, if a charge is dismissed at preliminary hearing for insufficient evidence to support probable cause, it may be refiled and the defendant held to answer at a second preliminary hearing if the State produces additional evidence or other good cause justifying a subsequent prosecution. Nicodemus v. State, 473 P.2d 312 (Okla. Crim. App. 1970). In Petitioner's case, the State refiled the First Degree Murder charge after it had previously been dismissed based on an interview of witness Dyra Malone. After holding a hearing, the magistrate determined the information was newly acquired and that probable cause existed to bind both defendants over for trial.

Upon review of the record, this Court agrees with Respondent that this claim concerns issues of state law and is not cognizable on habeas corpus review. No constitutional violation arose in connection with Petitioner's pretrial proceedings. The pretrial proceedings as a whole adequately informed Petitioner of the charges, witnesses, and evidence against him well before trial. His attack on the validity of the preliminary hearing became harmless error and unreviewable after the jury found him guilty after trial. See United States v. Mechanik, 475 U.S. 66, 73 (1986); United States v. Taylor, 798 F.2d 1337, 1339 (10th Cir. 1986). Petitioner is not entitled to habeas corpus relief on this claim.

### 2. *Consideration of extrinsic evidence (claim 2)*

As his second proposition of error, Petitioner complains that his jury was tainted when it inadvertently viewed evidence, an envelope containing grass, a few hairs and some reddish-colored fiber, that had not been admitted at trial. See Dkt. # 1-2. Petitioner further claims that the trial court erred in denying his motion for a mistrial based on the jury's exposure to extrinsic evidence. See id. The OCCA rejected this claim on direct appeal, citing Edwards v. State, 637 P.2d 886 (Okla. Crim. App. 1981), and finding that "there is no reasonable possibility that prejudice could have resulted from the jury's examination of the unadmitted evidence." (Dkt. # 4, Ex. C at 2).

In Vigil v. Zavaras, 298 F.3d 935 (10th Cir. 2002), the Tenth Circuit Court of Appeals addressed the relevant considerations in the habeas context as follows:

> The Supreme Court has held repeatedly that a jury's verdict "must be based upon the evidence developed at the trial."Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). In Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), the Court explained that under the Sixth and Fourteenth Amendments, "trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." Id. at 472-73, 85 S.Ct. 546.

> However, in the habeas corpus context, a federal court may grant relief only where the alleged misconduct "had substantial and injurious effect or influence in determining the jury's verdict," Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Crease v. McKune, 189 F.3d 1188, 1192 (10th Cir. 1999) (applying Brecht in a habeas case involving an ex parte conversation between a judge and a juror).
>
> *****
>
> In deciding whether outside information substantially influenced a jury's verdict (thereby prejudicing the defendant), courts cannot delve directly into jurors' mental processes. Mayhue, 969 F.2d at 923; United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir. 1988) (collecting cases); F.R.Cr.P. 606(b). A court may consider, however, a number of other factors, such as: (1) the degree to which the jury discussed and considered the extrinsic information, United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir. 1991); (2) the extent to which the jury had difficulty reaching a verdict prior to receiving the improper evidence, Mayhue, 969 F.2d at 926; (3) the degree to which the information related to a material fact in the case, Rodriguez, 125 F.3d at 744; (4) when the jury received the extrinsic evidence, Mancuso, 292 F.3d at 951-52; (5) the strength of the legitimate evidence, United States v. Chanthadara, 230 F.3d 1237, 1265 (10th Cir. 2000); and (6) whether the extrinsic evidence merely duplicates evidence properly before the jury. See Rodriguez, 125 F.3d at 744 ("[T]he introduction of duplicative or cumulative extraneous material may render juror misconduct harmless."); Hughes v. Borg, 898 F.2d 695, 700 (9th Cir. 1990) (collecting cases from the Ninth, Eleventh, and D.C. Circuits).

Id. at 940.

In the instant case, the Court finds Plaintiff has failed to demonstrate that the jury's brief, inadvertent exposure to the extrinsic material "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The material consisted of a sealed envelope containing grass, leaves, reddish fibers, and hair that had been submitted for DNA testing but the results of the testing were inconclusive. See Dkt. # 7, Tr. Trans. Vol. IV, dated January 18, 2001, at 202. The envelope was in the bottom of a sack of evidence containing the ski mask which had been admitted. See id. at 209. The jury was specifically instructed to disregard the evidence in the envelope. Id. at 214. After the jury concluded deliberations and returned its verdicts, the trial court asked about circumstances related to the

envelope. Juror Warren reported that he found the envelope, unsealed and opened it, and told the other jurors what was in it. Id. at 231. According to Juror Warren, the other jurors did not really see the contents of the envelope and expressed no interest in the material. Id. The trial court judge also polled the jury, asking whether the envelope in any way entered into the verdict as to either defendant. Id. at 232. Each juror answered "no." Id. at 232-35. Significantly, and as noted by the trial court judge, see id. at 207, the State did not present any DNA evidence. It was defense counsel who elicited testimony from one witness that DNA testing had been conducted. Id. at 116-17. The record makes clear that only one juror briefly viewed the contents of the envelope, that the jury did not discuss the possible significance of the contents of the envelope, and that the grass, fibers and hairs did not relate directly to a material fact. The State's evidence against Petitioner included the testimony of Dyra Malone who testified that just prior to the shooting, Petitioner James Henderson and another man she had not seen before had discussed taking the victim's car. See Dkt. # 6, Tr. Trans. Vol. III at 151, 154-157. Then the two men exited the car Petitioner had been driving, both armed with long guns. Id. They were seen walking around the corner in the direction of the victim's house. Id. at 157. Fingerprints of Petitioner's co-defendant, Ronald Kaufman, were found on the window of the passenger side of the victim's car. See Dkt. # 7, Tr. Trans. Vol. IV at 58-62.

The Court finds that based upon review of the cited record, Petitioner has failed to demonstrate that in light of the evidence presented at trial, the inadvertent submission of the extrinsic evidence had any effect, let alone a substantial and injurious effect, on the jury's verdict. The OCCA's adjudication of this claim was not contrary to or an unreasonable application of federal law. Petitioner is not entitled to habeas corpus relief on this claim.

### *3. Allen instruction (claim 3)*

As his third proposition of error, Petitioner claims that he was denied due process of law when the trial court coerced the jury into returning a guilty verdict by delivering a supplemental jury instruction that was intended to urge the jurors to achieve a unanimous decision. The OCCA rejected this claim on direct appeal, citing Gilbert v. State, 951 P.2d 98, 114 (Okla. Crim. App. 1997), and finding "no error in the trial court's giving of the *Allen* instruction to the deadlocked jury." (Dkt. # 4, Ex. C at 2).

Whether a jury has been improperly coerced by a judge is a mixed question of law and fact. Gilbert v. Mullin, 302 F.3d 1166, 1171 (10th Cir. 2002); Rodriguez v. Marshall, 125 F.3d 739, 744 (9th Cir. 1997). Pursuant to the AEDPA, this Court may grant habeas relief on such a claim only if the state court unreasonably applied the law to the facts of the case. Williams, 529 U.S. at 413. An Allen instruction derives its name from the supplemental jury instruction approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 501-02 (1896). The use of a supplemental instruction has long been sanctioned for the purpose of encouraging unanimity (without infringement upon the conscientious views of each individual juror) by urging each juror to review and reconsider the evidence in the light of the views expressed by other jurors, in a manner evincing a conscientious search for truth rather than a dogged determination to have one's way in the outcome of the deliberative process. See United States v. Smith, 857 F.2d 682, 683-84 (10th Cir. 1988). However, an Allen instruction must not be "impermissibly coercive." United States v. Porter, 881 F.2d 878, 888 (10th Cir. 1989). In determining whether a trial court's actions have improperly coerced a jury, the Supreme Court has held that a reviewing court must look at the supplemental charge given by the judge "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237

(1988) (quotation omitted). "Some of the factors we consider in making this determination include: (1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." United States v. Arney, 248 F.3d 984, 988 (10th Cir.2001).

Upon review of the language of the instruction given to Petitioner's jury, see Dkt. # 7, Tr. Trans. Vol. IV at 218-220, the Court finds nothing in the language of this supplemental instruction that could be deemed coercive. The trial court noted the serious nature of the jury's task, but urged "open and frank discussion" of the evidence and law, emphasized that no juror should "surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision," and insisted that no juror should concur in a verdict "which in good conscience he or she believes to be untrue." Id. at 218-19. That same language has been approved by the Tenth Circuit in previous cases. See Gilbert v. Mullin, 302 F.3d at 1173-74; Arney, 248 F.3d at 988.

As to the remaining factors governing the analysis, the Allen instruction was not given with the other instructions but was given as a supplemental instruction after the jury had announced it was deadlocked. After deliberating for just over four (4) hours, the jury had sent out a note asking what to do if they were deadlocked. The note further indicated that they were deadlocked with respect to one of the defendants, and the split in the votes was eleven to one. See Dkt. # 7, Tr. Trans. Vol. IV at 255. The trial court judge made further inquiry of the jury foreman who indicated that the jury had been deadlocked for 1 1/2 hours, id. at 215, and that further deliberation was not likely to cause a change in the count, id. at 216. The Tenth Circuit has indicated that although it is preferable for an Allen instruction to be given along with all the other jury instructions, it may be given after the

10

jury has commenced deliberations. United States v. Alcorn, 329 F.3d 759, 767 (10th Cir. 2003). Furthermore, there is not a *per se* rule against giving an Allen instruction after a jury has announced a deadlock. Gilbert, 302 F.3d at 1174; Arney, 248 F.3d at 989. Also, nothing in the record in this case suggests that the timing of the jury's deliberations and the giving of the instruction resulted in a coerced verdict. Petitioner offers no argument based on the length of time the jury deliberated after the giving of the instruction. The Court concludes that the Allen instruction in this case was not coercive. As a result, the Court finds Petitioner has failed to demonstrate that the adjudication of this claim by the OCCA was an unreasonable application of Supreme Court law. Petitioner is not entitled to habeas corpus relief on this claim pursuant to 28 U.S.C. § 2254(d).

## *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1-2) is **denied**.
2. A separate Judgment shall be entered in this case.

**DATED** this 17th day of August, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT